rights and franchises could be exercised for only 10 years. Beyond that term there were no rights or franchises at all. By the reincorporation these rights and franchises could not be extended or enlarged. The corporation thereafter could have and exercise only such rights and franchises as it theretofore had, which were limited to 10 years. And so the attempt to alter and extend its business from the manufacture and sale of stamped tin, iron, copper, zinc, and other sheet-metal wares, to the manufacture and sale of sheet-metal wares and household furnishing goods and kindred articles, was clearly an attempt to change and enlarge the rights and franchises theretofore had and exercised, and was unauthorized. Such an alteration and extension of its business could not be, and was not, effected by the attempted reorganization of the corporation. It seems to us that there can be no doubt but that the corporate existence of the corporation terminated at the expiration of the term of 10 years, for which the corporation was originally organized, namely, December 9, 1894, and that the judgment was therefore properly ordered in favor of the plaintiffs against the individual defendants, for the relief asked for against them.

Our conclusion is that the exceptions on the part of the plaintiffs should be overruled, and plaintiffs' motion for a new trial denied, and judgment ordered for the defendant corporation, dismissing the complaint as to it, with cost of this application and in the trial court, and that the exceptions on the part of the individual defendants should be overruled, their motion for a new trial denied, and judgment ordered for the plaintiffs against them for the relief asked for, with costs of the trial and of this application. All concur.

---

(3 App. Div. 432.)

MEADE v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. April 28, 1896.)

PERSONAL INJURIES—EXCESSIVE VERDICT.

> Plaintiff's legs were badly bruised by his falling from a wagon and being run over thereby. He was confined to his bed two weeks, and to the house five weeks. There was no proof of any pecuniary loss by his absence from business, or of the value of his time. A physician testified to a tenderness in his legs, with a tendency to dropsy, and a breaking down of the soft tissues, but the physician who attended him testified to nothing of the kind, and defendant's physician positively contradicted the existence of any symptoms thereof. *Held,* that a verdict for $4,500 was excessive.

Appeal from circuit court, Kings county.

Action by David Meade against the Brooklyn Heights Railroad Company for personal injuries. From a judgment entered on a verdict for plaintiff for $4,500, defendant appeals. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Thomas S. Moore, for appellant.
Joseph Fitch, for respondent.

CULLEN, J.  A car of the defendant collided with a market wagon driven by the plaintiff.  By the collision the plaintiff was thrown from his seat to the ground, and injured, the wheels of his wagon probably passing over him.  No question is raised by the defendant on this appeal except that the damages are excessive.  The plaintiff was a grocer.  He was confined in bed two weeks as the result of the injury, and to the house for five weeks more.  No proof was given of any pecuniary loss by his absence from business, or of the value of his time.  The injuries were that his legs were badly bruised from the fall and from being run over by the wheels of the wagon.  No bone was broken; no disfigurement or deformity of his person was occasioned by the accident.  His attending physician testified that when first called he found the plaintiff suffering from shock, which passed over in a day or two; that his legs were bruised, as though they had been run over; that there was a contusion on his right hip.  When asked what was the matter with his legs, he answered: "I couldn't state any more fully than I have what was the matter with his legs.  They were bruised and swollen.  That, from a medical point of view, answers the whole thing."  The evidence of the defendant's physician who examined the plaintiff was to the effect that on such examination he could discover no injury except a scar, and that the right leg was a little swollen.  The accident happened on the 1st day of May, 1895, and the trial was had in October of the same year.  It is difficult to say anything more about this case than that, in our opinion, the verdict is grossly extravagant.  It is not necessary to refer to other cases where either large verdicts have been reduced, or have been allowed to pass.  We are very chary of interfering with the award of damages made by juries, but there must come a point at which it is our duty to intervene.  If this plaintiff were physically disabled, or even disfigured and deformed, we should not feel warranted in interfering with a verdict that might go beyond our approval.  But here the plaintiff has no deformity, and has lost no member.  Save a scar, he bears no marks of his injury.  We are aware that on the trial a physician testified in his behalf that there was a tenderness in his legs, with a tendency to dropsy, and a breaking down of the soft tissues.  But this testimony is of the flimsiest character.  The physician who attended the plaintiff for his injuries testifies to nothing of the kind, and the defendant's physician positively contradicts the existence of these symptoms.  It was incumbent on the plaintiff to establish by a fair preponderance of proof the existence of these after-effects of his injuries before he could claim compensation for them from the jury.  We think on this he has not only failed, but that the weight of evidence is decidedly against him.

The judgment should be reversed, and a new trial ordered, unless plaintiff consents to reduce the verdict to the sum of $2,000, in which case the judgment, as reduced, is affirmed, without costs.  All concur.